67  217
69  509

## J. S. HAMILTON ET AL. v. THE STATE OF MISSISSIPPI,

### AND

## THE STATE OF MISSISSIPPI v. THE SURETIES OF HAMILTON ET AL.

1. SURETY. *Bond of penitentiary lessees.* Acts 1884, p. 971. *Opinion of supreme court judges. Pleading.*

   In a suit on the bond of the penitentiary lessees for rent due, where the defendants plead that they have been released from liability by a transfer of the penitentiary to the Gulf & Ship Island R. R. Co. under the act of 1884, after demurrer to such plea is overruled, and the question as to the effect of such a transfer without a bond being given, is, by agreement, submitted to the judges of the supreme court, whose opinion is to govern in the disposition of the case in the circuit court, and they give an opinion that the defense set up· is good, it is still competent for the plaintiff to traverse the plea and show that no such transfer was in fact made. In such case the judges are not arbitrators. They merely give their views of the law of the case on the facts as presented.

2. CONSTRUCTION OF STATUTE. *Condition.* Act of March 13, 1884. *Transfer of penitentiary lease. Bond.*

   Under the act of March 13, 1884 (Acts 1884, p. 971), which authorized Hamilton, Allen & Co., penitentiary lessees, to transfer to the Gulf & Ship Island R. R. Co. the unexpired lease, after which they were to be no longer liable, and required the railroad company to give bond for $100,000, payable to the state, conditioned for the faithful performance of the lease contract; the giving of the bond was not a condition precedent to a valid transfer and the release of the original lessees. The natural order contemplated was the execution and filing of the transfer in writing, and *then* the giving of the bond. The validity of a proper transfer could not depend on what might or might not subsequently occur as to the execution of the bond by the railroad company.

3. SAME. *Conditions, precedent and subsequent. Order of performance. Intent. Rules apply to state.*

   Whether a condition exists, or whether it is precedent or subsequent, is to be collected from the evident meaning as expressed. The question of precedency depends on the order of time in which the intent of the transaction requires performance. If a matter is to occur before another, or may so occur, it can not be said to depend on the other. As to this, the rules of law, applicable to contracts of individuals, apply to the state in its dealings with others.

4. SUPREME COURT. *Practice. Remanding entire case.*

   In a suit by the state against the principals and sureties on a bond, where

the sureties are improperly released, but judgment is entered against the principals, and, on appeal and cross-appeal, the judgment in favor of the sureties is reversed, as a result of this, the court, without considering the questions involved in the appeal of the principals, will reverse as to them also, and remand the entire case for a new trial.

APPEAL and cross-appeal from the circuit court of the first district of Hinds county.

HON. J. B. CHRISMAN, Judge, presided on the trial of the case against the sureties. Hon. C. H. CAMPBELL, Judge, presided on the trial of the case as against the principals.

Hamilton, Allen and Hoskins were lessees of the state penitentiary, and contracted to pay the state $39,420 per annum for the same. They entered into bond, with sureties, conditioned to carry out the terms of the lease contract, which included payment as above. This suit was brought on the bond against the lessees and their sureties for the alleged non-payment of the rent for the year 1885. Among others, the defendants filed the fifth plea which is mentioned in the opinion of the court. The state's demurrer to this plea was overruled. Thereupon, by leave of court, the state filed a replication to this plea, alleging that no transfer had been made of the penitentiary to the Gulf and Ship Island R. R. Co., because the company had failed to give bond as required by the act of March 13, 1884. To this replication the defendants demurred. The record was in this condition when the opinion of the judges of the supreme court as to the questions of law involved was, by agreement, sought and obtained. The other facts necessary to an understanding of the case are stated in the opinion of the court.

*T. M. Miller*, attorney-general, for the state.

1. In seeking the opinion of the judges there was no agreement as to facts, nor any idea of allowing the pleas to prevail, if true, without the fullest measure of proof. The purpose was (manifestly) to get the views of the judges, as if on appeal, to control in the further progress of the case, that is as to the law. There is no room for the supposition that it was meant to cut off inquiry as to the facts stated in the pleas.

Surely it could not have been the purpose of counsel for the sure-

ties to set a trap for the state's representative, and so win on a false plea. If no transfer was in fact made, the plea is false. The case being before the judges, *as if on appeal*, the conclusion that the decision was an arbitration settling the facts has absolutely nothing to rest on. The object was simply to obtain an expression of the views of the judges to govern as the law of the case. Certainly, if there be any doubt as to this, produced by the specious reasoning of appellees' counsel, it will be solved in favor of an investigation into the truth.

2. But if I am mistaken as to the scope of the agreement, I submit that the court should have allowed the facts to be tried on the issue presented by the replication. It was shown that the attorney-general made the agreement upon the belief that the facts were true as alleged in the plea, and that afterwards he learned the contrary. Certainly a court having control of the members of its bar, enforcing their agreements, has the power to relieve against one improvidently made, especially where the truth is discovered before the case is closed by judgment. Wharton on Ev., §§ 1184, 1189.

If by any possibility the effect claimed by opposite counsel could be given to the agreement of the attorney-general, he would have been false to his duty had he not protested against the state being prejudiced by his mistake of fact, especially as the defendants had not been prejudiced by the act.

3. The sureties had nothing to do with the further proceedings against the principals. So far as the latter were concerned, it was immaterial whether the plaintiff proceeded on the bond or on the contract to recover what was due.

*Nugent & McWillie*, for Hamilton *et al.*, lessees, appellants, and their sureties, appellees.

1. By the act of March 13, 1884, the lessees of the penitentiary were authorized to transfer their unexpired lease to the Gulf & Ship Island R. R. Co., "and, upon the execution of such transfer and assignment, and a copy thereof filed in the office of the secretary of the state, the said lessees or their assigns shall be released from all liability thereafter to the state of Mississippi." Acts 1884, p. 972.

Section 2 of this act authorized the railroad company to accept the transfer, and required a bond of $100,000 conditioned to carry out the contract. The only condition to the exoneration of the lessees was the filing of the transfer. The railroad company was required to give bond, *but not as a condition precedent to the transfer of the lease.* The lessees had nothing to do with it. Such was the decision of the judges of this court when this question was submitted to them by agreement of all parties to this suit, and the conclusion is correct.

Both the principals and the sureties were discharged by this transfer. The act expressly so provides.

2. We think the decision on the agreement entered into, by which the questions of law were submitted to the judges, disposed of this case finally. The agreement expressly stipulates that the ruling of the judges shall be accepted by all parties *as final,* and that no appeal shall be allowed. Whatever question might arise in chancery on a trial to set aside the judgment, all parties were bound here by this agreement.

3. The practice of allowing a plaintiff to answer over after demurrer sustained to his replication has never been allowed. *Ross* v. *Sims,* 27 Miss. 362; *R. R. Co.* v. *Orr,* 52 Ib. 542. This is the general rule, although it is held to be discretionary to allow a new replication in such case upon an affidavit of merits. The affidavit of merits was waived here, but it was still discretionary with the court to refuse to allow the replication filed. Besides, the application of the attorney-general was not seasonably made. He did not make it until the second term of the court after the decision was made. He could not depart from the agreement fairly made and raise a new issue.

4. The case was submitted to the judges as arbitrators. The attorney-general ought to have been very sure of the facts involved in the controversy before hazarding the rights of the state by the agreement. Under the chapter of the code in relation to arbitrations and awards, the case was fairly disposed of in the circuit court. If there was fraud or circumvention, under § 2413 of the code, the state could, in equity, set aside the award; but there is no

such contention here. Nor can any reason be shown for reversing the judgment in favor of the sureties.

(Counsel filed an elaborate written argument to show that the lessees, the principals in the bond, should also be released, and, therefore, that the judgment against them is erroneous. As the court holds that this judgment must be reversed as a consequence of reversing the judgment in favor of the sureties, and without reference to the questions involved on the appeal of the principals, it is unnecessary to give the argument.)

CAMPBELL, J., delivered the opinion of the court.

. The state sued on the bond of Hamilton and others as lessees of the penitentiary to recover the money claimed to be due for rent stipulated to be paid. A number of pleas were pleaded, and among them, one numbered 5th, in which it was averred that the defendants had been discharged from all liability on the bond sued on by an executed transfer of the penitentiary to the Gulf & Ship Island Railroad Company, in pursuance of an act of the legislature entitled, " an act to facilitate the construction of the Gulf & Ship Island Railroad Company, and for other purposes," approved March 13, 1884. While the case was pending in the circuit court, the attorney-general and counsel for the defense applied to the judges of, the supreme court for their consent to decide the questions of law relating to the liability of the sureties on the bond in advance of a trial of the case in the circuit court, inasmuch as the case might be expected to come before the supreme court ultimately, however decided by the circuit court, and it was desirable to obtain an expression of the view of the judges of said court as soon as possible for the guidance of all concerned in the further progress of the case in the circuit court. The judges of the supreme court consented to hear the case and give their view of the law applicable, as requested by the counsel for the state and the defendants. In pursuance of what had occurred, an agreement signed by counsel was presented to the judges in which, after stating, " it is hereby agreed to submit the questions of law relating to the liability of the sureties

on the bond," etc., it proceeded in the following language: "The questions the said judges are asked to decide are, 1. . . . . . . .

"2. As to whether or not a compliance with the act of 1884, authorizing the transfer of the convicts to the Gulf & Ship Island Railroad Company, in everything save the giving of the bond required by said act, released the sureties on the bond of the lessees." A stipulation of the agreement of counsel was that the decision of the judges of the supreme court should "be accepted by both the state and the said sureties as the law of the case, and the case is to be disposed of in the circuit court of Hinds county, in accordance with such decision," etc.

The attorney-general, and counsel for the defendants appeared before the judges of the supreme court with the papers of the case as pending in the circuit court, and argued fully the several questions involved in it. After the argument the judges took charge of the case, for the purpose of giving their view of the law upon the questions submitted to them. In the argument, it was conceded by the attorney-general that, if under the act of 1884, a valid transfer could be made to, and accepted by the Gulf & Ship Island Railroad Company, without its bond being first given, the sureties would be discharged. On considering the case, as submitted to them, the judges were impressed with the belief that the plain interpretation of the act of 1884, led to the conclusion that the giving a bond by the railroad company was not a condition precedent to a valid transfer of the penitentiary, but that the transfer was to precede the execution of the prescribed bond, which was a matter between the state and the railroad company.

· The following opinion was written and subscribed by the judges of the supreme court at the time, as expressive of their view of the law. It is confined to a single question, because one good plea in bar is as good as a hundred, and it was deemed unnecessary to decide any other question, as this was supposed to be decisive of the case so far as related to the liability of the sureties. This is the opinion :—

"The fifth plea presents a good defense to the action. It avers that a transfer was made by Hamilton, Allen & Co. to the Gulf &

Ship Island R. R. Co., and accepted by it, and a copy of the transfer filed in the office of the secretary of state, as provided by 'An act to facilitate the construction of the Gulf & Ship Island Railroad, and for other purposes,' approved March 13, 1884, and found in the acts of 1884, p. 971.

" The express declaration of that act is that ' upon the execution of such transfer and assignment in writing, and a copy thereof filed, etc., the said Hamilton, Allen and Company, lessees, or their assigns, shall be released from all liabilities thereafter to the state of Mississippi.' The act requires said company to execute a bond, but does not make the giving of such a bond a condition of the validity of the transfer authorized. The giving bond was a matter between the state and the railroad company with which Hamilton, Allen & Co. had nothing to do, and the transfer by them, and its legal effect, were not by the act made dependent on giving the bond required, which was to succeed the transfer. It is plain from the act that the purpose was to get a transfer of the lease from Hamilton, Allen & Co. to the G. & S. I. R. R. Co., and this was first authorized. Negotiation between these parties as to terms, and a transfer from one to the other as a complete act, evidence of which was to be filed in the office of secretary of state, were provided for to precede, therefore to be independent of, the requirement that the railroad company should give the bond. That was the condition on which the railroad company was to continue in the enjoyment of the lease, which it was empowered to obtain by assignment. The natural order contemplated was the transfer in writing, executed, and then giving bond, the necessity for which could not arise until the completion of the transfer. It was the transfer executed, and a copy filed, which was to release Hamilton, Allen & Co. The validity of such transfer did not depend on what might subsequently occur as to the bond. They were to be released by their own act, and not by what might or might not be done by the railroad company, which had first to deal with them, and then with the state as to the bond.

" The rules of law applicable to the contracts of individuals must apply here. The settled doctrine is that whether or not a condition

exists, or whether it is precedent or subsequent, or whether there is dependence or independence of stipulations or requirements, is to be collected from the evident sense and meaning of the parties as they have expressed themselves. The question of precedency depends ' on the order of time in which the intent of the transaction requires their performance.' · If a matter is to occur before another matter, or may so occur, it cannot be said to depend on the other. It must be independent in the nature of things, and so the law is declared by all the authorities.

" It will not do to say that the requirement of a bond must be held a condition of the validity of the transfer to the railroad company as a means of protection to the state. If the state was injured, or liable to injury for want of such a condition, it was its own doing, and it cannot complain. The truth is, the legislature assumed that a bond would be given by the railroad company, and without stipulating that it should be given as a condition of the transfer, authorized the transfer to be made, and as it was made, it must be held to have had the effect declared by the act. The transfer, in compliance with the law, divested Hamilton, Allen & Co. of all right to the lease, and the giving a bond, as required of the railroad company, was the condition on which it was to hold what was transferred. Failure to give the bond gave the state the right to assume control of the penitentiary. That was a sufficient protection to the state, but, whether it was or not, it is all the legislature provided.

" We concur in holding the fifth plea good, and for the reasons above given."

At the time of delivering that opinion, we did not have a doubt of its correctness, as an exposition of the law on the facts assumed to exist, and we do not entertain a doubt now of its accuracy as an expression of the true interpretation of the act of 1884. We adhere to the view expressed, and it must prevail as the law of the case, whatever be the consequence to any party to it.

Afterwards, in the circuit court, the attorney-general, who, since the submission of the questions of law to the judges of the supreme court, had been led to believe that the fifth plea, which he had

before regarded as true, was not in fact true, obtained leave of court, and replied, traversing the plea as to the transfer to the Gulf and Ship Island Railroad Company. After this, on motion of the defendants for judgment final "upon the award and judgment of the judges of the supreme court," the sureties on said bond were by the judgment of the circuit court discharged from all liability. To this the state excepted, and has appealed to this court.

Upon the rendition of the judgment discharging the sureties, the attorney-general obtained leave of the court, and presented a declaration on the contract of lease of the penitentiary, and to recover of the lessees, who were principals in the bond sued on in the action, the money claimed to be due from them for the period of time for which the action on the bond was brought, viz; the year 1885. This declaration was demurred to by the defendants, and when the demurrer was overruled divers pleas were filed, to all of which demurrers were sustained, except the general issue, on which a trial was had resulting in a judgment in favor of the state, from which the defendants have appealed.

It was error for the circuit court to discharge the sureties, on motion, in view of the traverse of the 5th plea. All that the opinion of the judges of the supreme court settled, or was intended to settle, was the law upon a given state of facts, viz; the facts stated in the fifth plea, which were assumed to be true, without inquiry, by the judges, who undertook to declare the law on the question submitted to them by the attorney-general and counsel for the defendants. It did not occur to the judges that the state would be precluded from controverting the facts set up in any of the pleas, and we fail to perceive now any plausible ground for such a ruling. The judges, in considering the case, looked only to the questions presented by counsel, and did not at the time consider the application of the view expressed to the pleadings. It is true that it was supposed that the effect of the opinion of the judges would be to discharge the sureties, but that was upon the assumption of the truth of the fifth plea. When it was proposed by the attorney-general to controvert the plea, the issue should have been tried.

There was no arbitration of the case by the judges of the supreme court, and no award by them, except as stated above. It was justly assumed that they would, when urged by counsel on both sides, give their view of the law, under a sense of their responsibility as judges, as if in court, and it was accordingly done, so that it might be known in advance what that view was.

It follows the view presented, that the judgment in favor of the sureties against the state must be reversed, and from this it results, necessarily, that the judgment in favor of the state against the principals in the bond, on the amended declaration, must be vacated. Otherwise, a curious condition of things would be presented. It may be that amending the declaration and proceeding to judgment against the principals in the bond would have amounted to an election to abandon the pursuit of the sureties, and pursue the principals instead, if the principals had acquiesced in the judgment against them, and the sureties had pleaded that in bar of the further pursuit of them. But as the whole matter is before us on appeal and cross-appeal, we are satisfied that our proper course is to reverse the judgment discharging the sureties, and, as a consequence of that, and, without inquiry into the rulings in the action as amended, to vacate the judgment in favor of the state, and restore the *status quo* of the case before the error discharging the sureties, on which error the subsequent proceeding was based.

*Judgment will be entered accordingly.*